

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 17, 1959

Hon. William A. Harrison
Commissioner of Insurance
State Board of Insurance
International Life Building
Austin, Texas

Dear Sir:

Opinion No. WW-574

Re: Propriety of a merger or consolidation of life insurance companies where the value of home office property in the resultant company exceeds the limits provided in Article 3.40, Texas Insurance Code.

By letter dated January 28, 1959, you have asked this office for an opinion concerning the effect of merger, consolidation or reinsurance agreements upon the provisions of Article 3.40 limiting the acquisition of and the investments in real estate by life insurance companies. This opinion will be directed solely to one portion of this request, the balance of such request still being under consideration by this department. The fact situation to be covered by this opinion is set forth in your request in the following language:

"Now assume a situation in which Company X desires to '. . . . . . . . .,' 'merge,' or 'consolidate,' as those terms are described above, with Company Y. Company X was incorporated prior to September 6, 1955, and owns a home office building which comprises approximately 80% of its total admitted assets. This home office building is greatly in excess of the statutory percentages permitted by Article 3.40, but is exempt under the provisions of the statute as it was owned prior to the effective date thereof.

"Company Y does not have a home office building, and therefore is subject to the limitations in Article 3.40. After a . . . . . . . merger, the surviving corporate structure would be Company Y. After a consolidation, of course, the surviving corporate structure would be a brand new corporation, Company Z, which would be made up of the combined assets of Company X and Company Y. In each of the [ two] situations,. . . .. merger or consolidation, the home office building of Company X would constitute approximately 75% of the total admitted assets of the surviving corporation, and thereby be in excess of the statutory limits. We respectfully request your opinion on the following questions:

"(1) If Company X were to be merged into Company Y, with Company Y to be the survivor, would the home office building of Company X be an obstacle to such a merger? In other words, would Company Y be entitled to the statutory exemption and privilege granted by the Legislature to Company X? Or would Company Y be required to dispose of the building as it conflicted with Article 3.40?

"(2) If Company X and Company Y were to consolidate into new Company Z, would the building of Company X be an obstacle to such consolidation? In other words, would the brand new corporation, Company Z, be entitled to the privilege granted by the Legislature to Company X? Or would Company Z be required to dispose of the building as it was in excess of the statutory limits?"

The question involved in the portion of your request here under consideration is whether the power of life insurance companies to merge or consolidate as provided in Articles 21.25 and 21.26 of the Texas Insurance Code of 1951 is limited or qualified by the provisions of Article 3.40 and in particular paragraph 1(b) thereof and, if so, the extent of such limitation or qualification.

Article 3.40 of the Texas Insurance Code restricts life insurance companies in the acquisition and holding of real estate. Such companies may "secure, hold and convey real estate" only for the "purposes" and in the "manner" provided in said article. One of the purposes permitted is: "1(a). One building site and office building for its accommodation in the transaction of its business and for lease and rental;. . ." This restriction has been in the insurance laws for many years and the specific language above quoted appears to have been employed at least as early as 1909. (Acts 1909, p. 192, ch.108, sec.11)

In 1955 Article 3.40 was amended by adding the language now set forth in paragraphs 1(b) and 1(c). These paragraphs further restrict life insurance companies by limiting the total investments that can be made in "home office" property (for convenience the property described in Section 1(a) of Article 3.40 will be referred to in this manner) in relation to the "admitted assets" of such company. Paragraph 1(b) as added, Acts 1955, 54th Leg., p. 916, ch. 363, sec. 13, is as follows:

"1(b). No such company shall (after the effective date of this Act) make any investment in the properties described in Paragraph 1(a) above if,

after making such investment, the total investment
of the company in such properties is in excess of
thirty-three and one-third (33 1/3%) percent of its
admitted assets as of December 31st next preced-
ing the date of such investment; provided, however,
that such investment may be increased to as much
as fifty (50%) percent of the company's admitted
assets upon advance approval by the Board of In-
surance Commissioners; provided further, that
such investment may be further increased if the
amount of such additional increase is paid for only
from surplus funds and is not included as an admit-
ted asset of the company. It is especially provided,
however, that these limitations shall not affect any
bona fide investment in such properties actually
made by contract or otherwise for reasonable and
adequate consideration prior to the effective date
of this Act."

Under the fact situation in question Company X has a home office
property acquired before the effective date of this Act and therefore even
though the value of this property is in excess of the statutory percentages
stated in paragraph 1(b), Company X's investment in the building is, never-
theless, proper in view of the provisions of paragraph 1(b), first, that the
limitations involved apply to an investment made after the effective date
of the Act, and second, the proviso in the last sentence of this paragraph
that the limitations of paragraph 1(b) should not "affect any bona fide in-
vestment. . .made. . .prior to the effective date of this Act". Since,
under the two fact situations given, X's identity will either be merged
into Y or into a new Company Z, the question is whether the exemption
previously extending to Company X may be utilized by Company Y in case
of a merger or Company Z in case of a consolidation and, stated differently,
whether the acquisition of such home office property with a value in excess
of the permissible percentages constitutes an investment in excess of the
percentages permitted by paragraph 1(b). The second principal question is,
assuming a violation in either of the two factual circumstances, would the
prospect of such a violation be a legal obstacle to the merger or consolida-
tion proposed.

Our conclusion is that the acquisition of the home office property
by Company Y in fact situation number one in a merger and by Company Z
in fact situation number two in a consolidation are proper and do not vio-
late the provisions of paragraph 1(b) of Article 3.40 and, therefore, would
not be a legal obstacle to such proposed merger or consolidation.

Authority for insurance companies to merge or consolidate is con-
tained in Articles 21.25 and 21.26 of the Texas Insurance Code. These pro-
visions in substantially the same language were introduced into the insurance

laws of this State in 1919. While the term "merger" is not mentioned, it is clear that provision for "merger" is made as well as for "consolidation" as those terms are commonly used with reference to the affairs of corporations. The provisions of Article 21.26 evidence that it was contemplated by the Legislature that either the surviving corporation in case of a merger or the newly created corporation in consolidation would take over all of the assets of the two corporations. For example, Section 1 of Article 21.26 provides in part:

> "Such companies proposing to consolidate may unite their assets, or any part thereof, and become incorporated in one body. . ."

Further, Section 2 applying to merger states in part:

> "One company may take over all the assets of the other companies proposing to consolidate. . ."

In our view, under the fact situation covered there has been no "investment" or, more particularly, no "investment of company funds" occasioned by the transaction--there has simply been in the terms of Article 21.26 a "uniting of the assets" of the two companies. Further, the last sentence of paragraph 1(b) expressly provides that the limitations of this paragraph should not affect any bona fide investment made prior to the effective date of the Act. It does not seem reasonable in view of the language utilized by the Legislature in paragraph 1(b) that by adding this paragraph in 1955 the Legislature intended to restrict the then existing opportunities of life insurance companies to merge and consolidate under Articles 21.25 and 21.26.

We would further point out that under the fact situations mentioned if in a merger X Company (the company with the building) should be the surviving company, there could be no reasonable contention that the provisions of Article 3.40 have been violated. From the standpoint of the objectives intended to be regulated by Article 3.40, or for that matter of insurance regulation in general, there does not appear to be any significant distinction whether the end result is X Company or Y Company or some new Company Z. The significant result from the standpoint of insurance regulation of any form of merger or consolidation is that two or more insurance companies have united their assets and will henceforth conduct their affairs as one corporation. Recognizing the rule that the Legislature should not be presumed to have created arbitrary distinctions between persons and corporations distinctive principally in form strengthens our conclusion that the prohibition against investment of funds in home office property in excess of the specified limits was not intended to apply to an acquisition of such property in a merger or consolidation such as is described in the portion of your request covered by this opinion. By this construction, full meaning is given to each of the portions of the Code discussed, i.e., paragraph 1(b) of Article 3.40 and Articles 21.25 and 21.26.

## SUMMARY

Merger or consolidation of two domestic
life insurance companies regulated by
Chapter 3 of the Texas Insurance Code
is not made unlawful by the fact that the
value of the home office property ob-
tained from one such company exceeds
the percentages in paragraph 1(b) of
Article 3.40, Texas Insurance Code, of
permitted investment in home office
property where such investment was
made by the company prior to the ef-
fective date of the 1955 amendment to
Article 3.40, and the resulting company
may continue to hold such property.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Fred B. Werkenthin
Assistant

FBW:jg

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

J. Milton Richardson
Marvin H. Brown, Jr.
Tom I. McFarling

REVIEWED FOR THE ATTORNEY GENERAL
BY:
W. V. Geppert